OPINION
{¶ 1} Defendant-Appellant Ronald Frech appeals his conviction of aggravated menacing, claiming only that his conviction was against the manifest weight of the evidence.
 {¶ 2} In February, 2001 Charles Fugate and his fiancé, Angela Smith, moved into the other half of the double in which Frech lived. At first Both Smith and Fugate, who has cystic fibrosis, considered Frech a friend and appreciated his helpfulness, particularly in light of Fugate's physical limitations. Apparently, the three had an understanding regarding parking spaces on the property.
 {¶ 3} On the evening of April 29, 2001, Fugate, Smith, and a friend, Stacy Strong, were playing cards and listening to music in Fugate's kitchen. Frech came home around 9:00 p.m., and when he found Strong's car parked in "his" spot, he banged on Fugate's door. Fugate opened the door, and Frech immediately began to argue about the parking spot. Fugate apologized that he had not noticed where Strong parked, and he offered to have her move the car. Seeking to calm the irate Frech, Fugate invited him in order to try to straighten the situation out.
 {¶ 4} Inside, however, Frech did not calm down. Instead, the situation dissolved into a physical altercation as Frech began "chest-butting" Fugate. Frech also threatened to kill Fugate. Knowing that Frech had previously shot at his girlfriend, Fugate took the threats seriously; he became afraid and repeatedly asked Frech to leave. When Frech ignored him, Fugate yelled to Smith to bring the phone, and he warned Frech that he was going to call the police. As Fugate began to dial the phone, Frech knocked it out of his hand and grabbed Fugate around the throat. Fugate reached back to punch Frech, and while the two men hit each other, Smith unsuccessfully tried to separate them.
 {¶ 5} Soon the fight ended, and Frech ran out the front door. Strong picked up the phone from the floor, dialed 911, and handed the phone to Fugate. As they waited for police to arrive, they heard Frech leave in his truck. Deputy Shaffer arrived a few minutes later and found Fugate with a big knot on his forehead and red finger marks around his neck.
 {¶ 6} Deputy Shaffer talked to Fugate, Smith, and Strong, and then asked them to write out statements. As they wrote, Shaffer went outside and talked to a neighbor, James Corbett, who had seen Frech drive up and heard much of the ensuing argument about the parking spot, including Frech's threats to kill Fugate. While Shaffer and Corbett were talking, Frech returned to the scene, still very angry. Shaffer placed Frech under arrest and drove him to jail.
 {¶ 7} Shortly after 1:00 a.m. Fugate and Smith heard loud music, and they were surprised to realized that Frech had already been released from jail. Fugate went outside, and the argument continued. At some point Frech's bathroom window was broken. Both Frech and Fugate called the police, and Deputy Shaffer returned to the scene. Fugate and Smith stayed up the rest of the night and barricaded themselves in their home by pushing furniture in front of the door. Later that morning Fugate and Smith saw Frech outside their door smiling, jumping around, and telling them, "I got you." Frech turned his music up and began to bang on the walls, then Frech began throwing Fugate's belongings out of the garage that they shared. Fugate and Smith once again summoned police to the house.
 {¶ 8} As a result of these events, Frech was charged with aggravated menacing, assault, and menacing. On July 20, 2001 a jury trial was held and Frech was found guilty of aggravated menacing, but not guilty of menacing or assault. Frech filed this timely appeal.
 {¶ 9} Frech raises the following as his sole assignment of error:
 {¶ 10} "THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} In his sole assignment of error, Frech argues that his conviction of aggravated menacing was against the manifest weight of the evidence. In support he claims that the jury clearly lost its way when it chose to believe the State's witnesses. We disagree.
 {¶ 12} The standard when reviewing a judgment under a manifest weight standard of review is:
 {¶ 13} "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 14} Frech's argument centers around his challenges to the credibility of the State's witnesses. However, as this Court has previously discussed, credibility of witnesses is primarily to be determined by the factfinder who actually saw and heard the testimony first hand. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. See, also, State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. While there were inconsistencies in the witnesses' statements and testimony, the differences primarily related to the assault and menacing charges. Notably, Frech was not convicted of either of those offenses. There is nothing in the record to lead us to believe that the jury was patently wrong in choosing to believe the State's witnesses in regard to the aggravated menacing charge.
 {¶ 15} Frech was convicted of aggravated menacing as proscribed by R.C. § 2903.21, which states that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person. . . ." Fugate, Smith, Strong, and Corbett agreed that Frech started arguing with Fugate as soon as Fugate opened the door of his home. Fugate tried to calm Frech and settle the problem peacefully. However, Frech not only refused to calm down, but he threatened to kill Fugate. Knowing that Frech had previously shot at his girlfriend, Fugate took the threats seriously. Fearing Frech, Fugate repeatedly asked him to leave. Instead, the verbal altercation degenerated into a physical fight when Frech began choking Fugate. Thus, Frech's violent behavior caused further fear in Fugate. Moreover, this evidence of Fugate's fear was not negated by the fact that he once again tried to talk to his neighbor and former friend four hours later. The evidence supports the jury's conclusion that Frech knowingly caused Fugate to believe that Frech would cause him serious physical harm.
 {¶ 16} We cannot say that it is patently apparent that the jury clearly lost its way. Nor is this one of those extraordinary cases in which the evidence weighed heavily against conviction. Therefore, we will not disturb the verdict based on the manifest weight of the evidence. Frech's sole assignment of error is without merit and is overruled. Accordingly, the judgment of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concur.